HAWKS *vs.* HAWKS, executrix.

| 64 | 239 |
| 95 | 418 |
| 64 | 239 |
| 104 | 171 |

The act of 1874 making the specific exemption of the Code liable for purchase money does not affect exemption which had been set apart before the act was passed.   The facts of the present case entitle the family of the debtor to protection against the judgment for purchase money of the land in question.

Homestead.   Before Judge POTTLE.   Oglethorpe Superior Court.   October Term, 1878.

In 1866, Warren and Thomas D. Hawks as administrators of Henry Hawks, Sr., sold 1000 acres of land to Henry Hawks, Jr. and James M. Smith, made them a deed and took their joint note and mortgage on the land.   In 1867 Smith and said Henry, Jr., divided the land, Smith taking 400 acres, for which he paid, and Henry, Jr., 600.   The latter then sold 294½ acres of the 600 to George F. Hawks and made him a deed.   The administrators gave up the mort-

gage aforesaid, and said George F. and Henry, Jr., executed to them a joint note for the 600 acres and a joint mortgage thereon. The consideration to said George F. for his undertaking in the last-named note was the deed from Henry, Jr. for the 294½ acres. Said George F. had 207½ other acres of land he had bought from Henry, Sr. in 1855, and paid for, and May 22, 1869, he had a homestead set apart under the constitution of 1868, containing 418 acres, which was composed of the 294½ acres and part of the 207½ acres aforesaid. The mortgage of George F. and Henry, Jr. to the administrators was foreclosed and levied on the 600 acres. George F. filed a claim, as head of a family, alleging that 294½ acres of it were not subject, because included in said homestead of 418 acres. This court held in 46 *Ga.*, that the 294½ acres were subject, and after the case came back, *the whole 418 acres* were sold by the sheriff May 6, 1873, and bought by Warren Hawks, who resold to George F. for $1,500, taking note and giving bond for titles. This note was sued to judgment and levied on 380 acres of land, which was the 418, less a small part which Warren had sold and conveyed to one Farmer with the consent of George F. George F. then filed his claim, as head of a family, to 60 acres as the homestead allowed him by the Code, and the land was sold in October, 1877, subject to this claim. Before the sheriff's sale in May, 1873, to Warren Hawks, to-wit, April 28, 1873, said George F. filed his application with the ordinary in due form for the said homestead of 60 acres. Warren filed a *caveat* thereto May 3, 1873, and the application and *caveat* were pending at the time of the sale on the 6th, as Warren well knew. The surveyor returned the plat May 10, 1873, and it was duly allowed and recorded.

The jury found the land subject. The claimant moved for a new trial upon the ground, among others, that the court erred in charging the jury as follows :

" If you believe that the judgment and execution are founded on a debt for the purchase money of the land

levied on and claimed as a homestead in this case, and that the purchase money is unpaid, then I charge you that the claimant is not entitled to the homestead set apart in April, 1873, until the purchase money is paid."

The motion was overruled, and claimant excepted.

SAMUEL LUMPKIN, for plaintiff in error.

POPE BARROW, for defendant.

BLECKLEY, Justice.

There are so many Hawks in the facts of this case, that the air is a little darkened. Only two of them need fix our attention: these are George F. and Warren. George F. had title to certain land, and procured 418 acres of it to be set apart to him as a homestead under the constitution of 1868. Because it was under mortgage for purchase money or for the removal of incumbrances, he could not hold it all in that way; so, in 1873, he filed his application in due form for the small homestead allowed by section 2040 of the Code, claiming 60 acres of the 418 acres. The application was *caveated* by Warren, and while the *caveat* was pending, the mortgage *fi. fa.* brought the whole 418 acres to sale, and Warren became the purchaser. Shortly thereafter, and in the month of May, 1873, the litigation on the pending application for the 60 acre homestead came to an end, the application being allowed, and the proceedings going to record. Warren sold out his whole purchase, including, of course, such interest as he acquired in the 60 acre homestead, to George F., giving the latter a bond for title and taking his note for the agreed purchase money. Judgment was obtained upon this note, and levied upon the tract of 418 acres, less a small parcel which had been disposed of satisfactorily to both parties. As the levy covered the 60 acre homestead, Thomas F. interposed his claim to that, setting up title to it by virtue of its having been set apart in the manner above stated. In 1877 the land levied upon was all sold subject to the claim; and the question now is,

whether the 60 acre homestead was subject to be sold under this levy or not.

It is said that the mortgage sale was for purchase money, and therefore the title passed by that sale to Warren Hawks, notwithstanding he bought with notice of the pending application for the small homestead. But the provisions of section 2040 of the Code were in force at the time of that sale, unmodified by the subsequent act of 1874, and until the latter act, there was, after the adoption of the Code of 1863, no distinction between debts for purchase money and any other debts, in reference to the small homestead. 41 *Ga.*, 180; 57 *Ga.*, 181. Certainly the act of 1874 could not aid a sale that was made before the act was passed; and, moreover, we think the act did not in any way affect exemptions which were set apart previously to its passage. Code, §§2047, 2048; 60 *Ga.*, 173. By his purchase at the mortgage sale, Warren Hawks acquired no title to the 60 acre homestead which could prevail against the homestead proceeding then pending, for the reason that he purchased with notice that the application was pending. 40 *Ga.*, 293; 44 *Ga.*, 603. Not only did he have notice of it, but he was a party to it, having himself filed a *caveat*. The date being within the interval between the adoption of the Code of 1863 and the passage of the act of 1874, the mortgage, though for purchase money, could not sell the small homestead. As it could sell the large one, the debtor had a right to abandon that and take the small one. 50 *Ga.*, 216, 584. And this was the course he pursued. The only very awkward fact in the whole case is that he now stands on the homestead right after having purchased from Warren Hawks without any express exception of the homestead from the terms of the purchase, the bond for titles which he took from Warren embracing the whole 418 acres comprehended in the first and larger homestead—the one which was abandoned. Holding Warren's bond to make title to the whole, and the debt created for purchase money when the bond was given being unpaid, he sets

up, in resistance of the collection of that debt, the small homestead as set apart under the proceedings which were pending when Warren bought at the mortgage sale. There is no doubt that if the adverse title which he now asserts was other than a homestead or trust title, it would not prevail; but in standing upon the homestead right in the present claim, he represents his family, not himself, and the case is therefore to be looked at as if the family were the party on the record instead of him. What he may have done to estop himself personally after their rights became vested, cannot be used to bar them. We think the facts of the case protect them, and that the court erred in charging the jury, and in not granting a new trial.

Judgment reversed.